# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

### No. ACM S32508

————————

### UNITED STATES
*Appellee*

v.

### John T. GRIECO, Jr.
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

Decided 1 October 2018

————————

*Military Judge:* Ryan Hendricks.

*Approved sentence:* Bad-conduct discharge, confinement for 3 months, and reduction to E-1. Sentence adjudged 17 January 2018 by SpCM convened at Joint Base Langley-Eustis, Virginia.

*For Appellant:* Lieutenant Colonel Judith A. Walker, USAF; Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Michael T. Bunnell; USAF; Mary Ellen Payne, Esquire.

Before HARDING, HUYGEN, and POSCH, *Appellate Military Judges*.

Senior Judge HARDING delivered the opinion of the court, in which Judges HUYGEN and POSCH joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————

HARDING, Senior Judge:

A military judge convicted Appellant, consistent with his pleas made pursuant to a pretrial agreement (PTA), of four specifications in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Specifically,

Appellant was convicted of possessing and using cocaine on divers occasions and of possessing and using heroin on divers occasions. Officer members sentenced Appellant to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. In accordance with the limitation of the PTA, the convening authority approved only three months of confinement. He otherwise approved the sentence as adjudged.

This case was submitted for our review on its merits without assignment of error. Upon our review, we noted that for both controlled substances—cocaine and heroin—Appellant was charged with a specification for divers possession of "some amount" of the controlled substance in a specific timeframe and location and charged with a corresponding specification of divers use of the controlled substance in the same timeframe and location.[1] The providence inquiry into Appellant's pleas of guilty for the heroin offenses failed to clearly establish any instance of possession of heroin by Appellant distinct from Appellant's use of that very same amount of heroin.[2]

Consistent with *United States v. Bullington*, 18 M.J. 164 (C.M.A. 1984), we find the specification for divers possession of heroin is multiplicious with the specification for divers use of heroin. Giving due weight to the "waive all waivable motions" provision of the PTA and Appellant's unconditional guilty plea, we nonetheless set aside the finding of guilty and dismiss with prejudice Specification 4 of the Charge (divers possession of heroin). Finding no other prejudicial error, we affirm the remaining findings and reassess the sentence to be the same.

## I. BACKGROUND

During the providence inquiry, the military judge asked Appellant why Appellant believed he was guilty of divers possession of heroin.

---

[1] We ordered the Government to show cause why the specifications for divers possession of cocaine and heroin were not multiplicious with the corresponding divers use specifications or were not an unreasonable multiplication of charges, and why the court should not dismiss the possession specifications.

[2] While there is also substantial overlap between the specifications for divers possession and divers use of cocaine, Appellant admitted during the providence inquiry that on at least two occasions he possessed some amount of cocaine that he did not use. Appellant described occasions when he would pick up cocaine from a dealer, transport the cocaine in his car, and then provide some amount of that cocaine to others. Additionally, Appellant described a search of his residence that resulted in the seizure of some amount of cocaine. Thus, there were sufficient instances of cocaine possession by Appellant not subsumed by Appellant's uses of cocaine, and the divers possession of cocaine specification is not multiplicious with the divers use of cocaine specification.

MJ (Military Judge): And at this time, I want you to tell me why you are guilty of the offense listed in Specification 4 of the Charge [divers possession of heroin].

ACC (Accused): Your Honor, in early January 2017 I started using heroin. The first time I was with [ES] in his car somewhere in Newport News, Virginia. We were hanging out with two of his civilian friends whose names I cannot remember at this time. [ES] pulled out a bag containing a gray powdery substance; he and his two friends started snorting the powder through their nose using a dollar bill. [ES] then offered me to use some with them. [ES] handed me a small amount of the heroin powder and the dollar bill and I snorted it through my nose. When he handed me some of the heroin and powder, I possessed it. No one else had any control over the powder except for me once [ES] gave it to me. This happened approximately ten times between January 2017 and 20 July 2017. This would occur either in my residence or [ES's] car or residence, all of which were within the Commonwealth of Virginia.

Each time I possessed it, I knew it was heroin because [ES] told me it was heroin and because of the effects I felt after using it. Additionally, there were occasions similar to the cocaine were [sic] [ES] would bring it to my house in exchange for money. On those occasions I would possess it at my house in Hampton, Virginia.

When the military judge asked Appellant why he was guilty of divers use of heroin, Appellant described additional uses when the heroin was injected into Appellant's arm.

Additionally, at some point in early February 2017, I was at [ES's] house with his civilian friend named [J]. While we were there, [ES] started mixing the same gray powdery substance we had snorted before into a liquid. He and [J] then used a syringe to soak up the liquid and injected it into their arms. [ES] asked me if I had -- or if I had wanted to try injecting the heroin and I accepted the offer. I was too afraid to do it myself, so [J] injected it into my arm for me. I immediately felt that strong sense of euphoria that I would feel after snorting the heroin, but this was a stronger rush. I used heroin intravenously approximately 8 times between February 2017 and 20 July 2017. Every time I would use it that way, [ES] or [J] would inject it into my arm, but I was doing it voluntarily.

The stipulation of fact, on the matter of divers possession of heroin by Appellant, substantially echoed Appellant's narrative response as to why he was guilty of that offense.

Appellant's PTA with the convening authority included a term that Appellant offered to "[w]aive all motions which may be properly waived under the Rules for Court-Martial [sic] and case-law." The military judge conducted an inquiry as to Appellant's understanding of this term, and Appellant acknowledged that he understood he was waiving all motions that by law are waived by a guilty plea. The military judge further asked Appellant, "In particular, do you understand that this term of your pretrial agreement precludes this court or any appellate court from having the opportunity to determine if you're entitled to any relief based upon any such motion?"[3] Appellant stated that he understood. Appellant's trial defense counsel stated that this term originated with the Defense and identified motions that the term covered that were being considered in the absence of a PTA. Appellant's trial defense counsel did not identify multiplicity or unreasonable multiplication of charges as a potential motion considered in the absence of a PTA or one specifically waived by the "waive all waivable motions" provision.

## II. DISCUSSION

Whether a motion is waived by the "waive all waivable motions" provision in the PTA or by Appellant's unconditional guilty plea, this court is not precluded from determining whether Appellant is due relief for a multiplicious specification. *See United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016). As the United States Court of Appeals for the Armed Forces (CAAF) acknowledged in *Chin*, Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires a Court of Criminal Appeals (CCA) to conduct a plenary review and "affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." *Chin,* 75 M.J. at 222 (quoting Article 66(c), UCMJ). The CAAF continued,

---

[3] This question comes directly from the *Military Judges' Benchbook*. Dept. of the Army Pamphlet 27-9 at 130–31 (10 Sep. 2014). To the extent this question includes a premise that a waiver of motions term in a PTA "precludes" an "appellate court from having the opportunity to determine" whether any relief is due upon the waived motions, that premise is incorrect. See *United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016) (holding courts of criminal appeals have the power under Article 66, UCMJ, to conduct complete appellate review unless waived altogether pursuant to Article 61, UCMJ, 10 U.S.C. § 861).

> While an accused is prevented from raising an issue by a "waive
> all waivable motions" provision, an accused has no authority to
> waive a CCA's statutory mandate unless, through Article 61,
> UCMJ, procedures, the accused waives the right to appellate re-
> view altogether—and that election cannot be made until after
> the trial and sentencing. . . . Because Article 61, UCMJ, is the
> exclusive means by which an accused can waive the right to a
> complete appellate review, . . . that right cannot be waived in a
> PTA, even when a "waive all waivable motions" provision is
> given full effect.

*Id.* at 223 (internal citations omitted). A "waive all waivable motions" provision and unconditional guilty plea are factors for a CCA to weigh in determining whether to nonetheless disapprove a finding or sentence. *Id.*

In the answer to the show cause order in Appellant's case, the Government identified two aspects of the record to support its contention that "Appellant describe[d] occasions where he possessed heroin separate and apart from those occasions where he used it." First, the Government points to Appellant's statement during the providence inquiry that ES would bring heroin to Appellant's home and Appellant would purchase it. Appellant was not, however, asked a follow-up question regarding what he did with this heroin. During the later inquiry as to Appellant's use of heroin, Appellant described using heroin in his home with ES, and Appellant was not asked if these uses of heroin in his home with ES matched the possession of heroin brought to his home by ES and then purchased by Appellant.

To demonstrate further that Appellant discussed possession of heroin distinct from his use, the Government points to Appellant's written statement that was made to the Air Force Office of Special Investigations (AFOSI) and attached to the stipulation of fact. In the statement, Appellant wrote, "I purchased heroin and cocaine from [ES] for a friend named [J]. Sometimes I would pick up the drugs from ES, sometimes ES would pick the drugs up from me." We are not persuaded.

We note Appellant did not specifically stipulate to the truth of his written statement to the AFOSI. Appellant stipulated only that the attachment to the stipulation of fact was "a true and accurate copy of the written statement." More importantly, Appellant was not asked about the statement during the providence inquiry. However, when asked why he was guilty of divers possession of *cocaine*, Appellant gave an answer that mirrored his written statement to the AFOSI.

> When [ES] and I would use cocaine together, I would give him
> money to buy cocaine and he would either bring it back to his

house or to my house. He would give me some amount for me to use and then he would keep some amount for him to use. There were a couple of occasions where he asked me to pick up cocaine for him from his dealer and bring it back to him and sometimes our friend [J]. When I would pick it up, I would transport it back to his house or my house. Each time I would transport it, I possessed the cocaine in my car. I could have prevented it from being in my car if I wanted to.

Appellant did not give a similar answer when asked why he was guilty of possession of *heroin*. Instead Appellant described being handed heroin powder, possessing it, and then snorting it and ES sometimes bringing heroin to Appellant's house for purchase by Appellant. Appellant was not asked and did not say exactly what he did with this purchased heroin, but the clear implication was that he used it, particularly because he never said that he passed it on to anyone else. He did discuss using heroin in his home with ES. Most importantly, Appellant did not state on the record or even write in his statement to the AFOSI that he ever possessed any amount of heroin and then stored it or transferred it to the possession of another.

In *Bullington*, the CAAF held that separate specifications alleging use and possession of the same amount of a controlled substance are multiplicious. Consistent with that legal principle, we conclude the stipulation of fact and Appellant's providence inquiry, which constitute all of the evidence of Appellant's guilt of heroin possession, do not support finding a possession of any amount of heroin by Appellant distinct from Appellant's contemporaneous use of the same heroin possessed.[4] On the record before us, we find no clear and specific possession of any amount of heroin by Appellant that did not also result in Appellant's contemporaneous use. Thus, we conclude the separate specifications alleging the use and possession of heroin are multiplicious in light of the facts established, or more pointedly, not established by the record.

Having found the heroin possession specification multiplicious for findings, we are left to decide whether we should affirm a conviction that violates the

---

[4] The deficiency in the record regarding Appellant's possession of heroin distinct from Appellant's use may present questions as to the legal and factual basis of Appellant's guilty plea as to the possession of heroin. *See United States v. Inabinette*, 66 M.J. 320 (C.A.A.F. 2008). However, given our dismissal of Specification 4, we need not address those questions.

Double Jeopardy Clause of the Fifth Amendment.[5] We decline to do so. In reaching this conclusion, we gave due weight to the "waive all waivable motions" provision of the PTA and Appellant's unconditional guilty plea, but were also struck by the parties' apparent lack of awareness at trial of the obvious application of the legal principle established in *Bullington* to this case. No matter contained in the stipulation of fact, addressed during the providence inquiry, or otherwise discussed in the record of this case demonstrates a recognition of the legal significance of establishing even a single possession of heroin distinct from its use, much less on divers occasions. The finding of guilty as to Specification 4 of the Charge (divers possession of heroin) is set aside and the specification is dismissed with prejudice.

Having dismissed Specification 4 of the Charge, we consider whether we should reassess the sentence or return this case for a sentence rehearing. We are confident we can accurately reassess an appropriate sentence.

This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at an appropriate reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). The CAAF has observed that CCA judges can modify sentences "'more expeditiously, more intelligently, and more fairly' than a new court-martial. . . ." *Id.* at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)).

Pursuant to *Winckelmann*, 73 M.J. at 15–16, we use four factors to guide our determination whether to reassess a sentence when applying them to Appellant's case:

- Dramatic changes in the penalty landscape and exposure: As Appellant was tried at a special court-martial, the jurisdictional maximum was the maximum imposable punishment with or without Specification 4 of the Charge. There is no change in the penalty landscape.

- Whether an appellant chose sentencing by members or a military judge alone: Appellant was sentenced by officer members. While it is conventional wisdom that our certainty as to the sentence absent the error is greater with a military judge, we are likewise certain of what this officer panel would have done in this case in light of the other three factors.

---

[5] U.S. CONST. amend. V; *see also United States v. Forrester*, 76 M.J. 389 (C.A.A.F. 2017) (holding that the concept of multiplicity is grounded in the Double Jeopardy Clause of the Fifth Amendment, which prohibits multiple punishments for the same offense, and multiplicious prosecutions when the Government charges a defendant twice for what is essentially a single crime).

- Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, in a related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses: Appellant still stands properly convicted of divers use of heroin and divers use and possession of cocaine. Because the remaining specifications capture the underlying conduct of the dismissed specification, all of the evidence presented at trial remains relevant and admissible. This factor weighs heaviest in our determination that we may confidently reassess Appellant's sentence.

- Whether the remaining offenses are of the type that CCA judges should have experience and familiarity with to reliably determine what sentence would have been imposed at trial: This court has ample experience with the types of drug charges and with drug cases with similar facts as in Appellant's case. Our experience informs us that we are able to reliably determine what sentence would have been imposed at trial.

Therefore, considering the facts of Appellant's case and the totality of the circumstances, we find we are able to determine to our satisfaction that, "absent any error, the sentence adjudged would have been of at least a certain severity . . . ." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). Having so found, we reassess Appellant's sentence to the same sentence that was approved by the convening authority: a bad-conduct discharge, confinement for three months, and reduction to the grade of E-1.

### III. CONCLUSION

The finding of guilt for Specification 4 of the Charge is **SET ASIDE** and Specification 4 of the Charge is **DISMISSED WITH PREJUDICE**. The remaining findings and the sentence as reassessed are correct in law and fact, and no other error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the remaining findings and the reassessed sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

8